UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT BECKLEY

UNITED STATES OF AMERICA

v.  CRIMINAL ACTION NO. 5:22-cr-00106

JAMES PRATT

### MEMORANDUM OPINION AND ORDER

Pending is the Government's objection to the Presentence Investigation Report ("PSR").

On February 3, 2023, the Court convened for sentencing but ultimately continued the matter and directed the parties to submit briefing on whether Mr. Pratt's 2013 conviction for child abuse resulting in injury, in violation of West Virginia Code § 61-8D-3(a), categorically qualifies as his second predicate crime of violence offense, which would warrant a four-level increase to his base offense level under U.S.S.G. § 2K2.1(a)(2). The parties timely filed their briefs and responses. [Docs. 74-76].

I.

On October 20, 2022, Mr. Pratt pled guilty to being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The PSR calculated Mr. Pratt's base offense level as 20 pursuant to U.S.S.G. § 2K2.1(a)(4)(A)[1] inasmuch as he committed the instant

---

[1] Section 2K2.1(a)(4)(A) provides for a base offense level of 20 if "the defendant committed any part of the instant offense subsequent to sustaining *one* felony conviction of . . . a crime of violence . . . offense[.]" (Emphasis added).

offense subsequent to sustaining a 2011 felony conviction for first degree robbery in violation of W. Va. Code § 61-2-12, which qualifies as a predicate crime of violence offense. *See United States v. Salmons*, 873 F.3d 446, 449 (4th Cir. 2017).[2]

The Government objects to this calculation and contends Mr. Pratt's base offense level is properly determined pursuant to Section 2K2.1(a)(2), which increases the base offense level to 24 if "the defendant committed the instant offense subsequent to sustaining at least *two* felony convictions of . . . a crime of violence . . . offense." U.S.S.G. § 2K2.1(a)(2) (emphasis added). The Government avers Mr. Pratt's 2013 child abuse resulting in injury conviction in violation of W. Va. Code § 61-8D-3(a) -- in addition to his first degree robbery conviction -- constitutes a second qualifying predicate crime of violence offense under the force clause set forth in Section 4B1.2(a)(1). Based upon the statutory definitions of "abuse" and "bodily injury," the Government contends "the minimum conduct required to convict a defendant of child abuse resulting in injury is a non-accidental infliction of physical injury that impairs a child's physical condition," which necessarily "involve[s] the use of physical force against the child." [Doc. 74 at 4].

The Government further avers a conviction under the child abuse statute requires proof of a *mens rea* more culpable than reckless or negligent conduct inasmuch as "a defendant must act purposefully or intentionally in a way that is not an accident" to be convicted of the offense. [*Id.* at 5]. The Government thus maintains Mr. Pratt's child abuse resulting in injury

---

[2] While *Salmons* held that a 1961 version of the West Virginia first-degree robbery statute constituted a crime of violence, the current version of the statute, and the version under which Mr. Pratt was convicted, "is substantially similar to and, at least for first degree robbery, is merely a restyling of the prior version[.]" *Clements v. United States*, No. 2:16-cv-05677, 2018 WL 6584477, *3 (Goodwin, J.) (S.D.W. Va. Dec. 14, 2018) (relying on *Salmons* and concluding "that West Virginia's current version of first-degree robbery also satisfies the force clause and is a crime of violence.").

conviction qualifies as a second predicate crime of violence offense, warranting a base offense level of 24 under U.S.S.G. § 2K2.1(a)(2).

Mr. Pratt, however, contends his child abuse resulting in injury conviction is not a qualifying predicate crime of violence offense inasmuch as the statute itself and the statute's definition of "abuse" is silent as to the *mens rea* necessary to complete the offense and thus can be violated with reckless or negligent conduct. [Doc. 75 at 3-4]. In support of this position, Mr. Pratt cites two other child endangerment statutes -- W. Va. Code § 61-8D-2(a)[3] and W. Va. Code § 61-8D-4(c)[4] -- each of which explicitly specify a *means rea* necessary for a violation thereof either in the statute itself or its accompanying definitions unlike Mr. Pratt's statute of conviction. Accordingly, Mr. Pratt avers the PSR properly calculated his base offense level as 20 pursuant to

---

[3] Section 61-8D-2(a), entitled, "Death of a child by a parent, guardian or custodian or other person by child abuse" provides as follows:

> If any parent, guardian or custodian *maliciously and intentionally* inflicts upon a child under his or her care, custody or control substantial physical pain, illness or any impairment of physical condition by other than accidental means, thereby causing death of such child, then such parent, guardian or custodian is guilty of a felony.

(Emphasis added).

[4] Section 61-8D-4(c), entitled, "Child neglect resulting in injury; child neglect creating risk of injury" pertinently provides:

> If a parent, guardian or custodian grossly neglects a child and by that gross neglect creates a substantial risk of death or serious bodily injury, as serious bodily injury is defined in section one, article eight-b of this chapter, of the child then the parent, guardian or custodian is guilty of a felony[.]

"Gross neglect" is defined as "*reckless or intentional conduct*, behavior or inaction by a parent, guardian or custodian that evidences a clear disregard for a minor child's health, safety, or welfare." W. Va. Code § 61-8D-1(6) (emphasis added).

3

U.S.S.G. § 2K2.1(a)(4)(A) based upon his single crime of violence conviction for first degree robbery. [*Id.* at 5].

## II.

The phrase "crime of violence" in U.S.S.G. § 2K2.1(a) has the same meaning given that term in Section 4B1.2(a) of the Guidelines, which pertinently defines a "crime of violence" as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that . . . has as an element the use, attempted use, or threatened use of physical force against another." U.S.S.G. § 4B1.2(a)(1). This is commonly referred to as the force clause. "The Supreme Court has interpreted the term 'physical force' as '*violent* force—that is, force capable of causing physical pain or injury to another person.'" *United States v. Covington*, 880 F.3d 129, 133 (4th Cir. 2018) (quoting *Johnson v. United States*, 559 U.S. 133, 140 (2010) (emphasis in original)). In determining whether a defendant's prior conviction qualifies as a crime of violence under the Guidelines, the Court applies the "categorical approach." *United States v. Rice*, 36 F.4th 578, 580 (4th Cir. 2022).

Application of the categorical approach "directs a court to focus solely on the fact of conviction rather than the facts of the case," which resulted in the conviction at issue. *Covington*, 880 F.3d at 132. "An offense qualifies as a crime of violence if all of the conduct criminalized by the statute – 'including the most innocent conduct' – matches or is narrower than the Guidelines' definition of 'crime of violence.'" *Rice*, 36 F.4th at 580 (internal citations omitted). In other words, "to qualify as a crime of violence under the force clause, the minimum conduct necessary for conviction of an offense must at least involve violent force." *Covington*, 880 F.3d at 133.

4

Additionally, "[o]ne of the elements that a predicate crime of violence must match is the *mens rea* element of a crime of violence." *Rice*, 36 F.4th at 580. "A predicate offense must require proof of a *mens rea* more culpable than recklessness and negligence to qualify as a crime of violence." *Id.* (citing *Borden v. United States*, ---- U.S. ----, 141 S. Ct. 1817, 1824-25 (2021)). Indeed, in *Borden*, a plurality of the Supreme Court concluded that crimes committed with only a reckless state of mind do not qualify as crimes of violence under the force clause inasmuch as "the phrase 'against another,' when modifying the 'use of force,' demands that the perpetrator direct his action at, or target another individual[;]' whereas, "reckless conduct is not aimed in that prescribed manner." 141 S. Ct. at 1824-25; *see also id.* at 1835 (Thomas, J. concurring) (reasoning "a crime that can be committed through mere recklessness does not have as an element the 'use of physical force' because that phrase has a well-understood meaning applying only to intentional acts designed to cause harm") (citation omitted)).

### III.

The Court first compares the offense of child abuse resulting in injury, in violation of W. Va. Code § 61-8D-3(a), with the elements of the force clause set forth in U.S.S.G. § 4B1.2(a)(1) in order to determine if the former constitutes a crime of violence. If the most innocent conduct criminalized by W. Va. Code § 61-8D-3(a) matches or narrows the Guidelines' definition of "crime of violence," and thus the *mens rea* required to complete the offense exceeds mere recklessness or negligence, a conviction will constitute a qualifying predicate crime of violence offense. "As with all cases involving statutory interpretation, [the Court] begin[s] [its] analysis with the text of the governing statute." *United States v. Perez*, 22 F.4th 430, 436 (4th Cir. 2022) (internal quotations omitted).

The applicable version of West Virginia Code § 61-8D-3(a) in existence at the time Mr. Pratt committed the offense provides as follows:

> If any parent, guardian, or custodian shall abuse a child and by such abuse cause such child bodily injury as such term is defined in section one, article eight-b of this chapter, then such parent, guardian, or custodian shall be guilty of a felony and, upon conviction thereof, shall be fined not less than one hundred nor more than one thousand dollars and committed to the custody of the division of corrections for not less than one nor more than five years, or in the discretion of the court, be confined in the county or regional jail for not more than one year.

W. Va. Code § 61-8D-3(a) (2013).[5] The term "abuse" is defined as "the infliction upon a minor of physical injury by other than accidental means." *Id.* § 61-8D-1(1). "Bodily injury" is defined as "substantial physical pain, illness or any impairment of physical condition." *Id.* § 61-8B-1(9). Thus, to be convicted of the offense, a parent, guardian, or custodian must inflict non-accidental physical injury on a child, which impairs a child's physical condition or causes such child substantial physical pain or illness.

The minimum conduct necessary for conviction of the offense must at least involve violent force capable of causing physical pain or injury to a child. This is so inasmuch as West Virginia law punishes the abuse of a child separate and apart from the neglect of a child. *Compare* W. Va. Code § 61-8D-3(a) (2013) (child abuse resulting in injury), *with* W. Va. Code § 61-8D-4(a) (2013) (child neglect resulting in injury); *see also State v. Sykes*, No. 13-1283, 2015 WL 508188, at *2 (W. Va. Feb. 6, 2015) (upholding defendant's convictions for both child abuse resulting in injury and child neglect resulting in injury given the "substantial evidence that [defendant] both abused his child by physically assaulting him, and neglected his child, by failing to seek appropriate medical attention."). Indeed, in West Virginia, the terms abuse and neglect are defined disjunctively. As noted above, "abuse" means "the infliction upon a minor of physical

---

[5] Stylistic amendments were made to W. Va. Code § 61-8D-3(a) in 2014.

6

injury by other than accidental means." W. Va. Code § 61-8D-1(1). Whereas "neglect" is defined as "the unreasonable failure by a parent, guardian, or any person voluntarily accepting a supervisory role towards a minor child to exercise a minimum degree of care to assure said minor child's physical safety or health." *Id.* § 61-8D-1(6). Simply put, the "abuse" of a child cannot occur -- without resort to the bizarre and maliciously imaginative -- absent the use of physical force. The inquiry, however, does not end here inasmuch as the offense must also require proof of a *mens rea* more culpable than recklessness and negligence to constitute a predicate crime of violence offense.

Mr. Pratt is correct that the child abuse statute does not explicitly specify a *mens rea*, nor is the Court aware of any Supreme Court of Appeals of West Virginia precedent definitively establishing what state of mind the crime requires. Nevertheless, the statute's definition of "abuse" is telling inasmuch as it makes clear the abuse of a child necessitates the infliction of physical injury by non-accidental means. While the phrase "by other than accidental means" is not expressly defined, the same must be afforded its ordinary meaning. *State v. Connor*, 244 W. Va. 594, 601, 855 S.E.2d 902, 909 (2021) (quoting Syl. Pt. 6, in part, *State ex. rel. Cohen v. Manchin*, 175 W. Va. 525, 336 S.E.2d 171 (1984) ("Undefined words and terms in a legislative enactment will be given their common, ordinary and accepted meaning."). The Court looks to dictionaries of common usage in discerning the ordinary meaning of the phrase.

Critical to the interpretation of the phrase "by other than accidental means," is the definition of the term "accidental." In its common usage, "accidental" means "happening without intent or through carelessness and often with unfortunate results." *Accidental*, Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/accidental (last visited Apr. 10, 2023). Similarly, Black's Law Dictionary defines "accidental" as "[n]ot having occurred as a result of

anyone's purposeful act; esp., resulting from an event that could not have been prevented by human skill or reasonable foresight." *Accidental*, Black's Law Dictionary (11th ed. 2019). The common, ordinary, and accepted meaning ascribed to the term "accidental" thus makes plain that the abuse of a child, that is, "the infliction upon a minor of physical injury by other than accidental means," requires intentional or purposeful conduct. W. Va. Code § 61-8D-1(1). In other words, the abuse of a child cannot occur accidentally or absent an intentional, knowing, or purposeful state of mind.

Decisions from the Supreme Court of Appeals of West Virginia appear to comport with this interpretation. Indeed, the Court has not found, nor has Mr. Pratt cited, a single case where a defendant has been convicted of child abuse resulting in injury where the defendant did not knowingly, purposefully, or intentionally abuse the minor victim. *See Rice*, 36 F.4th at 584 (explaining if one could commit the crime at issue "with a reckless or culpably negligent state of mind, it is odd that, in nearly eighteen years since the crime has been on the books, there has not been a single case involving the prosecution of a defendant for acts suggesting a reckless or culpably negligent state of mind.").

In contrast, there are a multitude of West Virginia cases where a defendant has been convicted of child abuse resulting in injury where the facts supporting such conviction suggested the defendant acted with an intentional state of mind. *See, e.g.*, *State v. Meadows*, 231 W. Va. 10, 16, 23-24, 743 S.E.2d 318, 324, 331-32 (2013) (recounting the medical examiner's testimony that the child's numerous internal injuries "were sustained as 'the result of powerful impacts to her tummy'" and that "'[s]omebody either kicked or punched ... [this toddler] in the stomach very, very hard'" and explaining "[t]he autopsy pictures of the child's lip and chin were used to dispel any misconception that the injuries were caused by anything other than forceful blows to the head," both of which supported defendant's conviction for, *inter alia*, child abuse resulting in injury.);

8

*State v. Jackson*, 215 W. Va. 188, 191, 597 S.E.2d 321, 324 (2004) (recounting the minor victim's testimony that the defendant -- convicted of child abuse resulting in injury -- "had pulled him out of his chair, kicked him, slammed him into the doorknob three times, and hit him in the face with his fist."); *State v. Shelby C.*, No. 18-0142, 2019 WL 4391277, at *7 (W. Va. Sept. 13, 2019) (finding no error in the trial court's denial of defendant's motions for judgment of acquittal after being found guilty of child abuse resulting in injury where "[t]he evidence demonstrated that the child's injuries were *intentionally* inflicted by [defendant] and/or her boyfriend.") (emphasis added); *State v. Daniel M.*, No. 17-0714, 2018 WL 6040178, at *1 (W. Va. Nov. 19, 2018) (describing the defendant "knock[ing] [the minor victim] into a banister, put[ting] his hand on her chest to shove her into a wall, slamm[ing] her to the floor, and restrict[ing] her breathing for between three and five seconds by grabbing her neck," all of which resulted in defendant's conviction of child abuse resulting in injury.); *State v. Hicks*, No. 17-0588, 2018 WL 3005951, at *2, *7 (W. Va. June 15, 2018) (concluding "the evidence at trial overwhelmingly supported [defendant's] conviction" for child abuse resulting in injury where, *inter alia*, expert testimony established "the nature of the [first child's] bruising indicated that it was the result of non-accidental trauma and was consistent with blunt force trauma from 'multiple strikes' amounting to more than 'four or five blows'" and "that the bruising to [the second child's] face and abdomen was the result of non-accidental trauma . . . [and] the mother's explanation that the injuries appeared overnight is referred to as 'magical injuries[,]' an explanation common for concealing non-accidental injuries."); *State v. Billy*, No. 16-0345, 2017 WL 383781, at *7 (W. Va. Jan. 27, 2017) (finding the evidence sufficient to support defendant's conviction of child abuse resulting in substantial injury where expert testimony established the child's physical injuries were "not

9

caused by accidental trauma such as shaking a baby in effort to wake him up" or "a short fall of a couch or [a] playful[ ] toss . . . into the air.").

Based upon the plain meaning of the phrase "by other than accidental means" as utilized in the statutory definition of "abuse," coupled with West Virginia decisions involving violations of W. Va. Code § 61-8D-3(a), a conviction for child abuse resulting in injury requires proof of an intentional, knowing, or purposeful intent, thus satisfying the *mens rea* requirement for a crime of violence.

In sum, Mr. Pratt's 2013 conviction for child abuse resulting in injury, in violation of W. Va. Code § 61-8D-3(a), "has an element the use, attempted use, or threatened use of physical force against another," U.S.S.G. § 4B1.2(a)(1) and "require[s] proof of a *mens rea* more culpable than recklessness and negligence." *Rice*, 36 F.4th at 580. Accordingly, the Court concludes such conviction categorically qualifies as a predicate crime of violence offense.

### IV.

Based upon the foregoing discussion, the Court **SUSTAINS** the Government's objection to the PSR and **FINDS** Mr. Pratt's base offense level is properly calculated as 24 pursuant to U.S.S.G. § 2K2.1(a)(2).

The Clerk is directed to send a copy of this written opinion and order to the Defendant and counsel, to the United States Attorney, to the United States Probation Office, and to the Office of the United States Marshal.

ENTER: April 13, 2023



Frank W. Volk
United States District Judge